IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 19-0715

_____

**FILED**
**February 22, 2021**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE B.W.

_____

Appeal from the Circuit Court of Marshall County
The Honorable David W. Hummel, Jr.
Case No. 16-JA-26

VACATED AND REMANDED WITH INSTRUCTIONS
_____

Submitted: January 13, 2021
Filed: February 22, 2021

David C. White, Esq.
Law Office of Neiswonger and White
Moundsville, West Virginia
Counsel for Petitioner M.M.


Thomas E. White, Esq.
White and Clyburn Law Offices
Moundsville, West Virginia
Counsel for Petitioner P.W.

Patrick Morrisey, Esq.
Attorney General
Jessica A. Lee, Esq.
Assistant Solicitor General
Lee Niezgoda, Esq.
Assistant Attorney General
Fairmont, West Virginia
Counsel for Respondent DHHR

Patricia A. Kurelac, Esq.
Kurelac Law Offices, PLLC
Moundsville, West Virginia
Guardian ad Litem

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE ARMSTEAD, deeming himself disqualified, did not participate in the decision of this case.

JUDGE J.D. BEANE, sitting by temporary assignment.

SYLLABUS BY THE COURT

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syllabus Point 1, *In the Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

WALKER, Justice:

B.W. is a young child who has been in the care of foster parents since the filing of an abuse and neglect petition against her biological parents, Petitioners M.M. and P.W., which concluded in November 2017.[1] At that time, the circuit court ordered what is commonly called a "section 5" disposition under West Virginia Code § 49-4-604(c)(5)[2] having concluded that Petitioners were presently unwilling or unable to provide for the child's needs. In examining West Virginia Code § 49-4-604(c)(5)(C)[3] as part of that disposition decision, the court determined that in spite of the best efforts of the Department of Health and Human Resources (DHHR), there were no parenting services available in West Virginia specifically tailored to Petitioners' need for reasonable accommodation

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015).

[2] The circuit court's determination was made in 2017 under West Virginia Code § 49-4-604(b)(5), prior to the amendment of West Virginia Code § 49-4-604. A subsection was added that precedes the disposition decisions section. The dispositions decisions section, previously subsection (b), thus became subsection (c) but there is no substantive difference for our purposes. We use the subsection (c) for ease of reference given the gap of time between the original disposition decision and the current appeal.

[3] West Virginia Code § 49-4-604(c)(5)(C) provides that the circuit court shall state in its order, should it find that the parents are presently unwilling or unable to provide adequately for the child's needs, "[w]hether the department has made reasonable accommodations in accordance with the Americans with Disabilities Act of 1990, 42 U. S. C. § 12101 *et seq.*, to parents with disabilities in order to allow them meaningful access to reunification and family preservation services[.]"

1

under the Americans with Disabilities Act (ADA).[4]  For that reason, the court did not terminate Petitioners' parental rights under West Virginia Code § 49-4-604(c)(6), but the case was dismissed from the court's docket and Petitioners did not appeal.

More than a year and a half later, after receiving a handwritten letter from Petitioner M.M. asking when they could have their child back, the circuit court held a status hearing.  Even though there was no motion pending to modify the disposition based on changed circumstances under § 49-4-606, the circuit court on its own modified the disposition of the case to terminate Petitioners' parental rights under § 49-4-604(c)(6) and expressed a hope that Petitioners would appeal its decision in order to draw attention to a perceived lack of ADA-compliant services in West Virginia.  Because Petitioners did not appeal the circuit court's prior dispositional order, we conclude that they waived any challenge to the services they received prior to 2017.  But a circuit court may not modify a disposition on its own, absent a motion under § 49-4-606.  For that reason, and because the parties were deprived of due process when they were not notified that the circuit court intended to take up a motion to modify disposition, we vacate and remand this case to the circuit court with instructions to reinstate its November 10, 2017 order.

---

[4] 42 U.S.C. §§ 12101 through 12213.

## I. Facts and Procedural History

The Department of Health and Human Resources (DHHR) filed an abuse and neglect petition against Petitioners M.M. and P.W. in June 2016 after their child B.W., then just over a year old, suffered second degree burns on her back after hours of sun exposure without appropriate clothing or sunscreen. The petition included several other allegations of abuse by one or both parents: (1) in the preceding winter months witnesses alleged Petitioners put the child in a stroller without a blanket, socks, or shoes, and walked to Wal-Mart in the middle of the night; (2) Petitioner father shook and hit the child, had a history of violent crimes, and chose not to take medication to treat his bipolar disorder; (3) Petitioner mother demonstrated troubling behavior while the child was in the hospital being treated for burns, specifically that she continuously yelled at the child for being fussy, and the medical records conveyed concerns from providers as to her ability to safely and effectively parent; and (4) mother had, on prior occasions, held the child upside down and shaken her when angry. B.W. was removed from Petitioners' custody and placed with a foster family.

At the adjudicatory hearing in August 2016, Petitioners admitted to failing to protect the child from sun exposure as alleged in the petition, and were adjudicated as neglectful parents. The court withheld a decision on adjudication as to abuse. Petitioners were identified as having intellectual disabilities that inhibited their ability to parent, and

the court ordered DHHR to provide services to Petitioners that conformed with the ADA and West Virginia Code § 49-4-604(a)(1). [5]

At subsequent hearings, DHHR reported to the circuit court that it had made efforts, but had not been able to find a parenting services curriculum specifically tailored to parents with intellectual disabilities available in West Virginia. So, it made modifications to existing services to provide Petitioners meaningful access. Specifically, DHHR provided parenting services to Petitioners from a provider who was aware of their intellectual disabilities and who had received training in and had extensive experience with accommodating parents with intellectual disabilities. Those services involved a slower introduction to the materials, additional and/or alternate explanations of concepts, and repetition of sessions. While the court extended Petitioners' improvement periods, it also stated that, because Petitioners had not made progress in their services and because

---

[5] Under West Virginia Code § 49-4-604, the DHHR's family case plan must include

[a] description of the type of home or institution in which the child is to be placed, including a discussion of the appropriateness of the placement and how the agency which is responsible for the child plans to assure that the child receives proper care and that services are provided to the parents, child, and foster or kinship parents in order to improve the conditions that made the child unsafe in the care of his or her parent(s), including any reasonable accommodations in accordance with the Americans with Disabilities Act of 1990, 42 U. S. C. § 12101 *et seq.* to parents with disabilities in order to allow them meaningful access to reunification and family preservation services[.]

Petitioners had other underlying issues, it would terminate parental rights if there was no substantial change in their ability to care for the child from that point forward.

At the conclusion of their improvement periods, the circuit court held dispositional hearings and concluded that neither parent was capable of providing for the child's day-to-day basic needs. It also concluded that DHHR had made "extraordinary efforts" in its attempt to secure appropriate, ADA-compliant services, but that such services were absent in West Virginia. Rather than terminate parental rights, the court made a disposition in accordance with West Virginia Code § 49-4-604(c)(5) (Section 5 Disposition) by order issued November 10, 2017. That order was not appealed, B.W. was placed in a legal guardianship with her foster parents, and the case was dismissed from the docket.

In July 2018, Petitioners, through counsel, filed a joint motion seeking aid of the court in facilitating transportation for their visits with the child as they did not have the financial means to coordinate transportation. The circuit court held the motion to facilitate visitation in abeyance, expressing hope that the parties could sort out the visitation issues informally. Then, in March 2019, Petitioner M.M. wrote the presiding judge a handwritten letter asking when Petitioners could have the child back and asking for an update. In response, the circuit court set a status hearing, held on June 13, 2019.

During the purported status hearing, the court was advised by the parties that Petitioners had secured an apartment, Petitioner P.W. was receiving Social Security Disability benefits, and Petitioner M.M. had secured work at Dairy Queen. No witnesses were presented by any party. The circuit court then concluded:

> There's no motion before the Court, but there is a case before the Court, and this child is entitled to permanency. [M.M. and P.W.] are entitled to permanency one way or the other. Are you ready? . . . . I'm going to try to make the State of West Virginia listen to us. . . . Based on the totality of the circumstances, . . . the Court reopens the matter for purposes of disposition . . . . At this time I do, in fact, terminate your parental rights as to [B.W.], and I hope you appeal me, and the reason I want you to appeal is so that the DHHR has to, in the future, provide persons, such as special persons such as yourselves, with appropriate services that may enable them to parent.

Parental rights were terminated by order dated June 17, 2019. Petitioners now appeal that order on the grounds that they were not provided ADA-compliant parenting services.

## II.    Standard of Review

Our review of dispositions in abuse and neglect cases is well-settled:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a

6

finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.[6]

With this standard in mind, we turn to the parties' arguments.

## III.    Analysis

Petitioners argue that termination of their parental rights was improper because the parenting services they received were not compliant with the ADA. The DHHR and the Guardian argue in response that the parenting services Petitioners received, while not ADA-specific programming, were tailored to accommodate the learning deficits exhibited by Petitioners and that Petitioners had meaningful access to services under West Virginia Code § 49-4-606(c)(5)(C).[7]

Problematically, Petitioners, the DHHR, and the Guardian all make arguments as to services rendered prior to the 2017 dispositional order. In fact, nothing in the appendix record submitted by Petitioners in support of their arguments occurred after 2017. So, before we may reach the merits of Petitioners' arguments, they must overcome the apparent finality of the 2017 dispositional order. Petitioners argue that the Section 5

---

[6] Syl. Pt. 1, *In the Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

[7] The DHHR argues both that Petitioners received meaningful access to services under subsection (5) and that no such finding is required to terminate parental rights under subsection (6). Because we conclude that Petitioners have waived arguments as to their meaningful access to services under the ADA by failing to appeal the 2017 dispositional order, we need not discuss the DHHR's alternative arguments.

Disposition imposed in the 2017 order definitionally concludes that Petitioners had a *present* unwillingness or inability to parent effectively, and that it was not final because it *temporarily* commits the care, custody, and control of the child to the DHHR, or, in this case, B.W.'s foster parents. But, we note that a Section 5 Disposition, while a less-restrictive disposition than termination of parental rights, is still a disposition. The case was dismissed from the court's docket upon entry of the 2017 dispositional order, which was a final, appealable order. Petitioners could have raised what they perceived as deficiencies in the parenting services provided during the pendency of their case by appealing the 2017 dispositional order and did not. As a result, we find that Petitioners have waived arguments as to ADA-compliant services by failing to appeal the 2017 dispositional order and turn instead to the procedure by which Petitioners' parental rights were terminated.

Employing the modification statute (West Virginia Code § 49-4-606), the circuit court modified disposition from a Section 5 Disposition under § 49-4-604(c) to termination of parental rights under subsection (6) of that code provision. But West Virginia Code § 49-4-606 states, in relevant part, that modification may be made "[u]pon motion of a child, a child's parent or custodian or the department alleging a change of circumstances requiring a different disposition[.]" The record is clear that the circuit court set the matter for a status hearing after receiving a handwritten letter from Petitioners. The circuit court noted several times on the record that there was no motion before the court,

8

and the plain language of the statute does not authorize the circuit court to modify disposition on its own, in the absence of any motion.

And, the circuit court provided no notice to the parties that it intended to take up a motion to modify disposition, sua sponte or otherwise. Under West Virginia Code § 49-4-606(a), "[a]dequate and timely notice of any motion for modification shall be given to the child's counsel, counsel for the child's parent or custodian, the department and any person entitled to notice and the right to be heard." Lack of notice that the circuit court intended to modify disposition, in addition to being procedurally flawed, deprived the Petitioners of any opportunity to prepare a defense to the termination of parental rights. The circuit court simply received a brief update from counsel and summarily proceeded to modify the disposition to terminate parental rights. And, factually, the circuit court imposed a *harsher* disposition, despite the apparent improvement in Petitioners' circumstances from those at the conclusion of the previous dispositional hearing in 2017.

We conclude that the termination of Petitioners' parental rights violated the procedure required by West Virginia Code § 49-4-606 to modify disposition and denied Petitioners due process. If DHHR believes termination of parental rights is appropriate, it may file its own motion to modify the disposition under that code provision and give appropriate notice to Petitioners that it seeks the termination of their parental rights and the grounds for that motion.

9

## IV.    Conclusion

For the reasons set forth above, we vacate the June 17, 2019 order of the Circuit Court of Marshall County terminating Petitioners' parental rights and remand with instructions that the November 10, 2017 dispositional order implementing a Section 5 Disposition be reinstated.

Vacated and remanded with instructions.